PUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

THE REAL TRUTH ABOUT OBAMA, INC.,

    *Plaintiff-Appellant,*

v.

FEDERAL ELECTION COMMISSION; UNITED STATES DEPARTMENT OF JUSTICE,

    *Defendants-Appellees.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

CAMPAIGN LEGAL CENTER; DEMOCRACY 21,

    *Amici Supporting Appellees.*

No. 08-1977

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:08-cv-00483-JRS)

Argued: May 13, 2009

Decided: August 5, 2009

Before NIEMEYER, Circuit Judge, C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation, and Joseph F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Senior Judge Beam and Judge Anderson joined.

## COUNSEL

**ARGUED:** James Bopp, Jr., BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellant. Harry Jacobs Summers, FEDERAL ELECTION COMMISSION, Washington, D.C., for Appellees. **ON BRIEF:** Michael Boos, LAW OFFICE OF MICHAEL BOOS, Fairfax, Virginia; Richard E. Coleson, Clayton J. Callen, BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellant. Thomasenia P. Duncan, General Counsel, David Kolker, Associate General Counsel, Adav Noti, FEDERAL ELECTION COMMISSION, Washington, D.C.; Gregory G. Katsas, Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Michael S. Raab, Eric Fleisig-Greene, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, Washington, D.C., for Appellees. Donald J. Simon, SONOSKY, CHAMBERS, SACHSE, ENDRESON & PERRY, LLP, Washington, D.C., Fred Wertheimer, DEMOCRACY 21, Washington, D.C., for Democracy 21, Amicus Supporting Appellees; J. Gerald Hebert, Paul S. Ryan, Tara Malloy, THE CAMPAIGN LEGAL CENTER, Washington, D.C., for Campaign Legal Center, Amicus Supporting Appellees.

## OPINION

NIEMEYER, Circuit Judge:

 The Real Truth About Obama, Inc. ("Real Truth") commenced this action against the Federal Election Commission

and the Department of Justice, challenging the constitutionality of three Federal Election Commission regulations—11 C.F.R. §§ 100.22(b), 100.57(a), and 114.15—and a Federal Election Commission enforcement policy under the First and Fifth Amendments. Real Truth alleged that these regulations chilled its right to disseminate information about presidential candidate Senator Obama's position on abortion. Real Truth seeks, among other things, a preliminary injunction prohibiting enforcement of these provisions.

The district court denied Real Truth's motion for a preliminary injunction, finding that (1) Real Truth did not show that it was likely to succeed on the merits as to any of its challenges; (2) Real Truth would not be irreparably harmed if the preliminary injunction were not granted; and (3) issuing the injunction would be against public policy.

On appeal, we apply the Supreme Court's standard for preliminary injunctions stated in *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374-76 (2008), and conclude that the district court did not abuse its discretion in denying the motion for a preliminary injunction. Accordingly, we affirm.

I

Real Truth, a Virginia nonprofit corporation organized on July 24, 2008, as an "issue-adversary '527' organization" under § 527 of the Internal Revenue Code, commenced this action six days after its incorporation to challenge three Federal Election Commission regulations—11 C.F.R. § 100.22(b) (defining when a communication *expressly advocates* the election or defeat of a clearly identified candidate); 11 C.F.R. § 100.57(a) (defining campaign contributions to include funds "*to support or oppose* the election of a clearly identified Federal candidate" (emphasis added)); 11 C.F.R. § 114.15 (regulating corporate and labor organization funds expended for electioneering communications)—and a Federal Election

Commission enforcement policy issued for determining Political Action Committee ("PAC") status using "the major-purpose test." Real Truth alleged that these provisions are "unconstitutionally overbroad" and "void for vagueness" in violation of the First and Fifth Amendments.

In its complaint, Real Truth asserted that it intends to publish audio advertisements stating candidate Obama's position on abortion and to circulate a fundraising letter to raise money to publish the "well-documented facts about Obama's views on abortion." While Real Truth asserted in its complaint that it is not a PAC and did not advocate the election or defeat of Senator Obama, it alleged that it

> is chilled from proceeding with these activities because it reasonably believes that it will be subject to an FEC and DOJ investigation and possible enforcement action potentially resulting in civil and criminal penalties, based on the fact that the FEC has deemed 527s to be PACs, based on [the challenged regulations].

Included in the relief that Real Truth seeks is a preliminary injunction enjoining the enforcement of the challenged provisions against Real Truth's "intended activities" and against others similarly situated.

The district court denied Real Truth's motion for preliminary injunction by order dated September 11, 2008, and Real Truth filed this interlocutory appeal, contending that the district court abused its discretion in denying its motion for a preliminary injunction.

II

A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial.

Case 08-1977   Document: 74   Date Filed: 08/05/2009   Page: 5 of 16
Case 3:08-cv-00483-JRS   Document 71   Filed 08/05/2009   Page 5 of 16

THE REAL TRUTH ABOUT OBAMA v. FEC           5

*See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220-21 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). We review the grant or denial of a preliminary injunction for abuse of discretion. *See Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 428 (2006); *In re Microsoft Litig.*, 333 F.3d at 524-25.

In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

Before the Supreme Court's decision in *Winter*, the standard articulated in *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), governed the grant or denial of preliminary injunctions in the Fourth Circuit. *See also*, *e.g.*, *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811-14 (4th Cir. 1991); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359-60 (4th Cir. 1991). In *Blackwelder* we adopted "the balance-of-hardship test," which begins with balancing the hardships

of the parties. 550 F.2d at 196. We stated, "the first step in a Rule 65(a) preliminary injunction situation is for the court to balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *Id.* at 195. If that balancing results in an imbalance in the plaintiff's favor, we then determine whether the plaintiff "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* In *Blackwelder*, we specifically held that the district court erred when it demanded that the plaintiff "first show 'likelihood of success' in order to be entitled to preliminary relief." *Id.*

Similarly, in *Rum Creek Coal*, we reiterated that the "hardship balancing test applies to determine the granting or denial of a preliminary injunction." 926 F.2d at 359. We held that only after the district court concluded that the balance of the likelihood of the irreparable harm to the parties tilted in favor of the plaintiff was it to turn to the merits of the case to determine whether the plaintiff "show[ed] grave or serious questions for litigation." *Id.* at 363 (internal quotation marks omitted).

Our *Blackwelder* standard in several respects now stands in fatal tension with the Supreme Court's 2008 decision in *Winter*.

*First*, the Supreme Court in *Winter*, recognizing that a preliminary injunction affords relief before trial, requires that the plaintiff make a clear showing that it will likely succeed on the merits at trial. 129 S. Ct. at 374, 376. Yet in *Blackwelder*, we instructed that the likelihood-of-success requirement be considered, if at all, only *after* a balancing of hardships is conducted and then only under the relaxed standard of showing that "grave or serious *questions* are presented" for litigation. 550 F.2d at 195-96 (emphasis added); *see also Rum Creek Coal*, 926 F.2d at 363. The *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the

merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation.

*Second*, *Winter* requires that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief. 129 S. Ct. at 374-76. *Blackwelder*, on the other hand, requires that the court *balance* the irreparable harm to the respective parties, requiring only that the harm to the plaintiff outweigh the harm to the defendant. 550 F.2d at 196. Moreover, *Blackwelder* allows that upon a strong showing on the probability of success, the moving party may demonstrate only a *possibility* of irreparable injury, *id.* at 195 –- a standard explicitly rejected in *Winter*, 129 S. Ct. at 375-76.

*Third*, in *Winter*, the Supreme Court emphasized the public interest requirement, stating, "In exercising their sound discretion, courts of equity should pay *particular regard* for the public consequences in employing the extraordinary remedy of injunction." 129 S. Ct. at 376-77 (emphasis added) (internal quotations marks and citation omitted). Yet, under the *Blackwelder* standard, the public interest requirement "does not appear always to be considered at length in preliminary injunction analyses," even though it must always be considered. *Rum Creek Coal*, 926 F.2d at 366-67; *see also Blackwelder*, 550 F.2d at 196.

*Fourth*, while *Winter* articulates four requirements, each of which must be satisfied as articulated, *Blackwelder* allows requirements to be conditionally redefined as other requirements are more fully satisfied so that "grant[ing] or deny[ing] a preliminary injunction depends upon a 'flexible interplay' among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others." 550 F.2d at 196. Thus, as an example, the court in *Blackwelder* observed:

> The two more important factors are those of probable irreparable injury to plaintiff without a decree

8 THE REAL TRUTH ABOUT OBAMA v. FEC

and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; *and plaintiff need not show a likelihood of success*.

550 F.2d at 196 (emphasis added).

Because of its differences with the *Winter* test, the *Blackwelder* balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit, as the standard articulated in *Winter* governs the issuance of preliminary injunctions not only in the Fourth Circuit but in all federal courts.

Thus, we review the district court's denial of the preliminary injunction under the *Winter* standard, considering in light of the stated requirements the district court's findings and holdings (1) that Real Truth is not likely to succeed on the merits; (2) that Real Truth will not be irreparably harmed if the injunction is denied; and (3) that the injunction requested would not be in the public interest.

III

In its complaint, Real Truth sought, as part of the relief requested, a preliminary injunction prohibiting the enforcement of 11 C.F.R. § 100.22(b) (defining the statutory term "expressly advocating"); 11 C.F.R. § 100.57(a) (regulating campaign contributions received in response to solicitations); 11 C.F.R. § 114.15 (regulating corporation or labor organization-funded "electioneering communications"); and the Federal Election Commission's policy statement regarding the analysis of PAC status. To support its position, Real Truth relied heavily on our recent decision in *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008). In denying Real Truth's motion for a preliminary injunction, the district court found that Real Truth was unlikely to succeed on the merits because the statutory provisions that Real Truth

challenges are justified by *Buckley v. Valeo*, 424 U.S. 1 (1976), and its progeny.

The district court concluded (1) that § 100.22(b) "is virtually the same test stated by Chief Justice Roberts in the majority opinion of [*FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007)]"; (2) that the "support or oppose" language in § 100.57 is not unconstitutionally vague because "these words have even been suggested by the Fourth Circuit as a proper standard to use, *see Leake*, 525 F.3d at 301"; (3) that § 114.15, regulating the permissible use of corporate and labor organization funds, "simply adopted the test enumerated in [*Wisconsin Right to Life*]" and therefore was not unconstitutionally overbroad or vague; and (4) that the "major purpose" test in the Federal Election Commission's policy statement draws its essence from court cases that determine whether an organization can be regulated by the Federal Election Commission as a PAC.

In determining whether the district court erred in concluding that Real Truth did not make a clear showing that it was likely to succeed, we begin by recognizing that some regulation of speech and political contributions related to campaigns for election is constitutional. *See, e.g.*, *McConnell v. FEC*, 540 U.S. 93, 115-21 (2003) (reciting history of campaign finance regulation and acknowledging that some regulation is necessary to "protect[ ] the integrity of our system of representative democracy"). Supreme Court precedent allows for the regulation of contributions to and expenditures by PACs that are narrowly defined as having "the major purpose" of expressly advocating "the election or defeat of a clearly identified candidate [for federal office]." *Buckley v. Valeo*, 424 U.S. 1, 79-80 (1976); *cf. Leake*, 525 F.3d at 287 (holding that a state campaign finance statute that defined PACs as those having "*a* major purpose," as distinct from "*the* major purpose," to expressly advocate was unconstitutionally overbroad). These opinions also allow for the regulation of corporations and labor unions' communications, prohibiting

them from using general funds to "expressly advocate" for or against the election of a candidate. *See, e.g.*, *Buckley*, 424 U.S. at 28 n.31; *see also FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 253 (1986). Although magic words such as "vote for, elect, support, cast your ballot for, Smith for Congress, vote against, defeat [and] reject" are sufficient to qualify such communications as express advocacy of a particular named official, *Buckley*, 424 U.S. at 44 n.52 (internal quotation marks omitted), a communication without the magic words may still be sufficient as the functional equivalent of the magic words and therefore may be regulated, but "only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Wisconsin Right to Life*, 127 S. Ct. at 2667; *cf. Leake*, 525 F.3d at 283-84 (holding a North Carolina campaign finance statute unconstitutional where "[t]he very terms of [the] statute— including, but not limited to, 'essential nature,' 'the language of the communication as a whole,' [and] 'the timing of the communication in relation to events of the day' . . .— are clearly 'susceptible' to multiple interpretations").

Notwithstanding the numerous Supreme Court opinions on the subject, the regulation of speech related to political campaigns remains a difficult and complicated area of law that is still developing. And for that reason, as well as the stringent preliminary injunction standard, Real Truth bears a heavy burden in showing its likelihood of success. Any relaxation of its burden, for example to require that Real Truth show only a *possibility* that it will eventually prevail, would be inadequate. *See Winter*, 129 S. Ct. at 375-76.

When we compare the challenged provisions with those upheld by the Supreme Court, we reach the same conclusion reached by the district court that Real Truth has not, at this preliminary stage in the litigation, made a *clear showing* that it is likely to succeed on the merits at trial, even though we do not decide the merits nor intend to foreclose any outcome on the merits.

First, considering the definition of "expressly advocating" in 11 C.F.R. § 100.22(b), which describes the functional equivalent of the "magic words" specified in § 100.22(a), we cannot conclude that it is *likely* unconstitutional because the definition is facially consistent with the language in *Wisconsin Right to Life*. Section 100.22(b) provides:

> Expressly advocating means any communication that —
>
> * * *
>
> (b) When taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because —
>
>> (1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
>>
>> (2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action.

11 C.F.R. § 100.22(b). This language corresponds to the definition of the functional equivalent of express advocacy given in *Wisconsin Right to Life*. *See* 127 S. Ct. at 2667. In *Wisconsin Right to Life*, the Court stated that where an "ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate," it can be regulated in the same manner as express advocacy. 127 S. Ct. at 2267; *cf. Leake*, 525 F.3d at 283-84 (holding a North Carolina campaign finance statute unconstitutional where the terms of the

statute that defined express advocacy were "clearly susceptible to *multiple interpretations*" (emphasis added) (internal quotation marks omitted)). And consistent with *Wisconsin Right to Life* and unlike the statute considered in *Leake*, § 100.22(b) cabins the application of the regulation to communications that "could *only* be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s)" (emphasis added) and where "[r]easonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action." By limiting its application to communications that yield no other interpretation but express advocacy as described by *Wisconsin Right to Life*, § 100.22(b) is likely constitutional.

With respect to 11 C.F.R. § 100.57, Real Truth challenges as unconstitutionally vague the words "*support or oppose* the election of a clearly identified Federal candidate" (emphasis added) when used to identify regulated campaign funds. Section 100.57 defines as follows those monies that will be treated as contributions subject to regulations:

> (a) *Treatment as contributions*. A gift, subscription, loan, advance, or deposit of money or anything of value made by any person in response to any communication is a contribution to the person making the communication if the communication indicates that any portion of the funds received *will be used to support or oppose* the election of a clearly identified Federal candidate.

11 C.F.R. § 100.57(a) (emphasis added). Contrary to Real Truth's argument, however, we have expressly sanctioned the challenged language. In *Leake*, we noted that North Carolina "remains free to enforce all campaign finance regulations that incorporate the phrase 'to support or oppose the nomination or election of one or more clearly identified candidates.'" 525 F.3d at 301. Accordingly, we conclude that Real Truth is not

THE REAL TRUTH ABOUT OBAMA v. FEC  13

likely to prevail on its challenge to § 100.57(a), although again we do not decide the ultimate merits of that issue here.

Real Truth also challenges as unconstitutionally vague 11 C.F.R. § 114.15, regulating corporate and labor organization funds expended for certain electioneering communications. That regulation provides:

> Corporations and labor organizations may make an electioneering communication . . . to those outside the restricted class unless the communication is susceptible of no reasonable interpretation other than as an appeal to vote for or against a clearly identified Federal candidate.

11 C.F.R. § 114.15(a). The regulation also provides that "any doubt [concerning whether a communication is an appeal to vote for or against a clearly identified Federal candidate] will be resolved in favor of permitting the communication." 11 C.F.R. § 114.15(c)(3). Again, as with § 100.22(b), § 114.15(a) mirrors the language of *Wisconsin Right to Life* by limiting its application to communications that cannot be interpreted reasonably in any way other than as an appeal to vote for or against a clearly identified federal candidate. *See* 127 S. Ct. at 2667. In view of the fact that § 114.15(a) mirrors the language of *Wisconsin Right to Life*, we cannot conclude that Real Truth is *likely* to succeed on the merits in challenging this provision as unconstitutional.

Finally, Real Truth challenges the Federal Election Commission's failure to announce a specific major purpose test in its policy statements for enforcement contained at 69 Fed. Reg. 68056 (Nov. 23, 2004) and 72 Fed. Reg. 5595 (Feb. 7, 2007). The major purpose doctrine, as noted by the Federal Election Commission in its policy statements, "operates to limit the reach of the [Federal Election] statute in certain circumstances." 72 Fed. Reg. 5595, 5602. Thus, an organization (corporation or labor union) with activities that center around

14      THE REAL TRUTH ABOUT OBAMA v. FEC

something other than electing or defeating a candidate will never have *the* major purpose required by the statute even if it is one of several of the organization's major purposes. The major purpose test is intended to exempt from regulation organizations that expend or contribute money for express advocacy but do not have as the major purpose of their existence the election or defeat of a particular candidate. The Commission explained that "[a]pplying the major purpose doctrine . . . requires the flexibility of a case-by-case analysis of an organization's conduct that is incompatible with a one-size-fits-all rule." *Id.* at 5601. It is this allowance of a case-by-case analysis that Real Truth challenges as unconstitutionally overbroad.

The approach taken by the Federal Election Commission in this regulation, however, appears simply to be adopted from Supreme Court jurisprudence that takes a fact-intensive approach to determining the major purpose of a particular organization's contributions. For example, in *Massachusetts Citizens for Life*, 479 U.S. at 249-51, the Court examined *the entire record* to conclude that the plaintiff did not satisfy "the major purpose" test. *See also Akins v. FEC*, 101 F.3d 731, 743 (D.C. Cir. 1996) (holding that "it is the purpose of the organization's disbursements, not of the organization itself, that is relevant"), *vacated on other grounds*, *FEC v. Akins*, 524 U.S. 11 (1998); *Shays v. FEC*, 511 F. Supp. 2d 19, 26-31 (D.D.C. 2007) (holding that FEC's choice to regulate § 527 groups by determining whether they qualified as political action committees on a case-by-case basis was neither arbitrary nor capricious); *cf. Buckley*, 424 U.S. at 79-80 (announcing "the major purpose" test but not defining how to determine the major purpose of an organization).

In view of the similarity of the approach taken by the Federal Election Commission in its policy statements and the positions taken by the courts, we cannot conclude that Real Truth has carried its heavy burden at this stage of the case of

clearly showing that it is likely to succeed on the merits with regard to the Commission's enforcement strategy.

To justify an injunction before trial on the merits, it is incumbent upon Real Truth to make a *clear showing* that it is *likely* to succeed at trial on the merits. Because of the close relationship between the text of the provisions challenged and binding court decisions, we cannot conclude that the district court erred in finding that Real Truth failed to meet that burden.

IV

In addition to the requirement of making a clear showing that it will likely succeed on the merits at trial, Real Truth was also required to make a clear showing that it was likely to suffer irreparable harm in the absence of the preliminary injunction. *See Winter*, 129 S. Ct. at 374-76.

The district court recognized that chilling speech constitutes irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). But it also found that Real Truth was free to disseminate its message and make expenditures as it wished, and its only limitation was on "contributions based on constitutionally permitted restrictions," which the district court determined "[did] not amount to enough harm to constitute irreparable harm."

While the district court's ruling regarding harm was, in effect, an extension of its conclusion that the restrictions were likely constitutional, the district court recognized also that Real Truth had not made a showing that its proposed communications would violate the regulations as written.

Regardless of whether the district court was correct in this regard, we conclude that it acted within its discretion in deter-

mining that any harm created by Real Truth's doubt about the legality of its intended fundraising and advertising was outweighed by the public interest identified by the Supreme Court in the enforcement of narrow restrictions on contributions to political candidates. *See McConnell*, 540 U.S. at 115-23 (noting the importance of the public interest in "combating the appearance or perception of corruption engendered by large [unregulated] campaign contributions"); *Mass. Citizens for Life*, 479 U.S. at 264 (noting that the regulations prevent "corporations from serving as conduits for the type of direct spending that creates a threat to the political marketplace"); *Buckley*, 424 U.S. at 29 ("[T]he weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms caused by the $1,000 contribution ceiling"); *Leake*, 525 F.3d at 284 (noting that underpinning Supreme Court campaign finance jurisprudence is a desire to strike "a balance between the legislature's authority to regulate elections and the public's fundamental First Amendment right to engage in political speech"). The district court also recognized that overruling, on a preliminary basis, regulations that apparently serve these objectives would not be "in the public interest," as required by *Winter*, 129 S. Ct. at 374, and would create a "wild west" of electioneering fundraising and communications. We cannot conclude that it abused its discretion in this regard.

Accordingly, we affirm the district court's order denying a preliminary injunction.

*AFFIRMED*